# United States District and Bankruptcy Courts

# For the District of Columbia

Ghulam Ali

1601 Brisbane Street

Silver Spring, Maryland, 20902

Phone No. 301-681-3093

Plaintiff.

Case: 1:25-cv-00852 JURY DEMAND
Assigned To : Sooknanan, Sparkle L.
Assign. Date : 3/21/2025
Description: Employ. Discrim. (H-DECK)

VS.

Civil Action No

Lee Zeldin, Administrator

United States Environmental Protection Agency

1200 Pennsylvania Avenue, NW, DC 20460

Defendant

## COMPLAINT

### Introduction

I worked as an economist in the Engineering and Analysis Division where I continuously experienced hostile work environments during one-to-one meetings. Julie Hewitt acted as a defecto Branch Chief. She assigned the work and fixed unrealistically tight deadlines so that Brian Damico, Branch Chief, could take adverse action against me. She was particularly hostile

1

RECEIVED

MAR 21 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

during the meetings. I filed the EEOC complaint. While the EEOC Counselor was talking to the Branch Chief about my complaint, he placed me on the performance improvement plan. He retaliated against me on filing the complaint.

I used to leave from the office hours after rush hours. Branch Chief suspended me for two weeks for leaving late from the office without any genuine reason. The union wanted to file the case, but the union attorney missed the deadlines. As a result, the union did not file the case. The union attorney perhaps colluded with the management.

I was transferred from the Engineering and Analysis Division in 2021 to the Immediate Office of Water. There Julie became my supervisor in 2022. I am continuously facing hostile work environments. She has been deliberately fixing unrealistic deadlines for the tasks so that she has pretext to harass me. She required me to develop computer codes for artificial intelligence, machine learning. I am an economist not a computer programmer. I have no education in programming. The computer programming is not one of the core responsibilities of an economist in the Office of Water.

I applied for the promotion. I was not given the opportunity of higher grade. No similarly situated individual has continuously been discriminated as I have been on the basis of race (Asian), sex (male), national origin (Pakistani) and age (above 60 with date of birth June 1, 1946). In summary, the management

(1) Failed to promote to GS 14

(2) Suspended me for two weeks

(3) Created hostile work environments

(4) Placed me on the performance improvement plan.

(5) Denied reasonable accommodation

**Jurisdiction**

This court has jurisdiction over my federal statutory claims. Title VII as amended 42 U.S.C. section 20000e et seq. prohibits employment discrimination based on race, color, religion, sex and national origin. The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amend several sections of Title VII. In addition, section 102 of the CRA amends the Revised Statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the Americans with Disabilities Act of 1990, and section 501 of the Rehabilitation Act of 1973. Age Discrimination in Employment Act of 1967 as amended 29 U.S.C. section 621 et seq. prohibits age discrimination.

**Jury Trial**

I request for the jury trial. The Civil Rights Act of 1991 permits Title VII cases to be tried by jury. 42 U.S.C. § 1981a(c).

**Parties**

I am an Economist at the United States Environmental Protection Agency (EPA). EPA is an agency of the United States government. I have been working at EPA Washington, DC head quater and have my office at the 1200 Pennsylvania Avenue, NW Washington DC 20460.

**Venue**

Venue is appropriate in the United States District Court of Washington DC because all of the defenders are employee of the EPA. And all events giving rise to claims occurred in the District of Columbia.

**Exhaustion of Administrative Remedies**

I have exhausted my administrative remedies. On May 23, 2019, I filed a discriminatory complaint with the United States Equal Employment Opportunity Commission. Commission has issued the notice of right to sue within 90 days.

**Discrimination**

My Branch Chief, Brian Damico, had biweekly one-to-one meetings to discuss the projects. However, he invited another a staff member, Julie Hewitt, to the meetings. Julie Hewitt was not my supervisor. She had no supervisory role. Both Julie and Brian collaborated to create very hostile environment without any genuine reasons in the meeting. Julie Hewitt acted like a de facto Branch Chief during the meetings. The Engineering and Analysis Division (EAD) has engineers, chemists and biologists among others. They had their one-to-one meetings with their Branch Chief without any another staff member present; Julie was not invited to their one-to-one meetings. I have requested my Branch Chief over time that she should not be present in our one-to-one meetings. But he did not listen to me. Such meetings were very stressful because of their hostile behavior towards me. This had been continuing since the Brian Damico became the Brach Chief. The situation worsened over time. Julie was particularly hostile during the meetings. My Branch Chief collaborated with her no matter what. I was singled out for mistreatment in the Division. Brian Damico suspended me for two weeks for leaving late from the office. I have reasonable accommodation because of perfume allergy created by EPA

4

deliberately. I tried to avoid rush hours traffic because of perfumes and clones people wear. I am highly allergic to fragrances and volatile compounds because of long exposures to these chemicals. I have a lot of injuries because of reaction to volatile organic compounds. So, I tried to avoid exposure to fragrances by traveling by Metro during non-rush hours. However, this condition has no concern of the management. Management suspended me[1] without any genuine reason. The National Treasury Employees Union was supposed to follow the grievances processes, but they missed the deadline. Perhaps attorney of the union colluded with the management. So, I did not get the opportunity to plead my case. The union's attorney was very incompetent. The management used the entry and exit record to the office to suspend me. It violated the agreement between the union and the EPA which states that "EPASS badge and LACS shall not store or track, or be used to store or track, attendance, location, or work hours".

Interestingly, Julie Hewitt and Ashley Allen both for years have been coming to the office late and leaving late without any reasonable accommodation. The entire division staff knows about it. Similarly, Tom Born was leaving the office in the middle of the day for a long time now[2]. One thing common among these individuals was that they were all not only white but also younger compared to me. Leaving from the office late has been nonissue in the Environmental Protection Agency. The Engineering and Analysis Division managment has not taken any action against anyone else. However, the management was extremely discriminatory in my case. It retaliated against me because I had filed the Equal Opportunity Employment Opportunity Commission complaint. It imposed limits on my stay in the office so that I would get allergic reaction and would not be able to work. There was no such restriction on rest of the

---

[1] My suspension was in August 2018.
[2] I am not complaining about these individuals; what I am complaining about is discriminatory treatment of mine by the management.

staff. Limiting the time, I can stay in the office had created very stressful situation in finishing my work. The management was trying to drive me out of the office.

Julie Hewitt had once tried to take personal action against me under a false pretext. I had informed the acting Branch Chief, James Covington, at that time. She was so empowered by the managment that she feels she can take personnel actions even under the false pretext. She dictated and assigned work to me. She fixed unduly tight deadlines while Branch Chief just collaborated with her despite the hostile work environment. Unrealistic deadlines were deliberate efforts to harass me and to create very hostile work environment. Branch Chief continuously harassed me under the pretext of the deadlines to please Julie. For instance, I was working on the Technical Support Document for aluminium criteria with the Standards and Health Protection Division in a collaborative effort to response to the comments by a senior member of the Office of Water. A tentative deadline was set by the staff itself to respond within three days. The Technical Support Document was prepared by another staff member who left for another job within the Agency. That work was later assigned to me. However, I was not in charge of the document. I worked on the document which was placed on the SharePoint website so that everyone can response to comments and correct each other's response if needed. I worked on the document. Around the time to leave the office in the evening, I tried to save the changes to the document, but the software did not allow me to save the changes. It was around 6:30 PM. So, I had to leave the office to avoid another disciplinary action, even though the government gave an hour early leave because of snow emergency. I could not leave early because of the work. Everyone else could work beyond the office hours. But I could not, because the Branch Chief had taken the action against me and suspended me for two weeks for leaving late from the office. Some staff members work from home (telework) they have no

restriction on their time either. I was singled out for discrimination. The management was hostile, while retaliated against me because of my disability, national origin, religion, age, sex, etc. I got very worried that I will lose all my work. To be on the safe side, I saved the document anyway with the different date, January 29, 2019[3]. At the same time, I saved the document on my computer's hard drive, so that I can work on it next morning. Somehow, the file was also saved on the Share Point website.

I rushed to get out of the office to avoid the chance of being suspended again. I rushed to send a brief email to the group informing them that I could not save changes in the shared file. Next morning, the government allowed the employees to arrive three hours late because of snowstorm. I was going to take leave at that day, but I was worried that I would not be able to meet the tentative target date. I was supposed to start work from 12 O' clock, but I came early anyway to look over what I did a day before. My Branch Chief called me to ask me to call Julie. Around the same time, Division Director asked me that I give Julie a call. I told him that I have a file problem, and I am trying to fix it, and I will call her. Julie never called me, instead she called Brach Chief and the Division Director to create an issue without any basis so that Branch Chief and Division Director would retaliate again me. I called Julie and told her that my file is on the SharePoint. She should see that file and I am going to send her the file which was on my hard drive soon. I sent Julie the file a few minutes before 12' O clock. Soon after I got email

---

[3] Either the staff member in charge of the file at Standards and Health Protection Division mistakenly uploaded the read only file or the software program changed the file to read only. Read only file could not be saved as a common share point file. It is common to face problems in editing the SharePoint files. Branch Chief however used the incidence to get mad at me under the pretext that I did not fix the SharePoint software, whereas I cannot fix the software. Moreover, there was no time to diagnose the problem at 6:30 PM. It would have taken two or three days for EZ tech to come up with the solution.

(dated January 30, 2019[4]) from my Brach Chief with a copy to Julie stating that my work is not acceptable, without reading anything. And stating baseless things and directing me to contact Julie and briefing her on my work as if she is the supervisor not him. Next morning, I talked to the Brach Chief he was very mad that why Julie called him and Division Director. He did not want Julie to call him and division chief. I did not have any control who individuals can call. They are all free to call anyone they like. Julie did not come to the office at that day. I did not know that I should call her because she did not ask me to call her. Nor I had any reason to call her. Branch Chief collaborated wth Julie to create hostile work environments on the situation which are quite normal in the office set up. Had there been no software issue, there would have been no problem.

Staff collaborates in responding to comments and try to give it to the managment once it is complete. I have worked on these kinds of analyses before with the Standards and Health Protection Division (SHPD). To the best of my recollection, I was never late. Julie was the one who was mostly if not always late in reviewing the documents without any repercussions from the management. SHPD staff members Julianne Mclaughlin, Daniela Anderson, and Lisa Larimer may be able to attest to it, among others. Usually, staff tries its best to get the document to the upper managment. Once the document is complete it is forwarded to the Division Director. Interesting, the deadline was not 12 'O clock either. Another email was sent informing me that we have four more hours. Interestingly, document was sent next day. That shows the staff has flexibility in these matters. It is normal to delay the document when it is needed. There is usually no hard and fast date. For example, Selenium criteria document was developed in a similar manner. As I stated before that I was not supposed to be in before 12 O clock, but I came

---

[4] Copies of emails cited in this document are not attached.

early to finish my task. I did not see any email that morning either because I was rushing to respond to the comments from the upper management before 12 'O clock so that the team has enough time to finalize the document.

Julie and Brach Chief both collaborated in creating hostile work environment. They used the deadline to create a pretext to take an action against me. Nobody has taken any action against Julie delaying reviews of the SHPD criteria documents. For example, a Branch Chief from the Office of Wetland, Oceans and Watersheds (OWOW) requested feedback from us on his write up. I provided comments and sent it to Julie Hewitt (email, dated April 8, 2019). After a month or so a staff member inquired about it (email, dated May 3, 2019). I wrote back to him that I remember commenting on it. It turned out that Julie never sent it to the Branch Chief. My Branch Chief told me that he will deal with it. He told me that he was glad that "I did not throw Julie under the bus". Nothing had happened to the best of my knowledge. The Branch Chief of OWOW waited and waited and finally sent his write up to the upper management without our input. I was not allowed to send directly to OWOW by Branch Chief so that I would not get the credit. Instead, Julie would get the credit by sending email, while I did the work. I am not complaining about doing the work. I am complaining about the discriminatory treatment. Other staff members send their work directly to others after review if needed. Compared to this situation with the pretext that I did not finish my review before 12' O clock about aluminium, is a clear example of the discrimination by the management.

I worked very hard on the work for the OWOW. I developed the work assignment and task order for three regulations. Once the foundation was laid for the progress, I was suddenly taken off the project by the Branch Chief in collaboration with Julie. The assumption of the dredge and fill program by states is a high visibility project. But managment did not want me to

9

get any recognition of a high visibility and high priority project. That work was given to Milam Karen Feret, a white and younger staff member. Instead, I was given a very difficult project to work on that required developing response essays for the Step 1 rule. To make matter worse, Julie developed a very tight schedule to prepare essays (Julie's email, dated March 4, 2019). She was not the one who should have developed the schedule because she was not the one who was going to do the work. The schedule should be developed by the person who was actually going to do the work. Anyway, each week, I was supposed to prepare the response essay and send it to Julie for review. She was supposed to review it and send it back to me and I was supposed to address comments according to the schedule developed by her. Interestingly, I did not review the public comments because they were not assigned to me; other staff members reviewed them. Naturally, they should have prepared the response essays. I had reviewed the comments only on one topic once a long time ago, but that topic strangely was not included in my assignment. Developing response essays without reading the public comments is simply nonsensical. However, this project was imposed on me. I sent essays to Julie on time. Not even a single essay was reviewed by her almost in one and half month. The real purpose was to create pretext of not meeting the deadline which spanned approximately from March 7, 2019 to April 16, 2019 to take action against me and creating opportunities for the Branch Chief to harass me on the basis of deadlines. The crux of the matter is that Julie developed the schedule in collaboration with the Branch Chief just to harass me without fulfilling any deadline herself. This was a strategy to develop pretext to take adverse action against me. Moreover, she was supposed to have joint meeting with some other economists and me about how to deal with the comments but that never happened either. I finished all the essays without any feedback from anyone else. I was provided just small summaries of each comment topic. Branch Chief very well knew that

Julie was not fulfilling her responsibilities. Nothing happened to Julie. Unequal treatment was hallmark of the Branch Chief.

Julie has been creating problems for the staff. She used to be Branch Chief but was taken off. The entire division knows about her. But the managment continuously ignored the problem. Wendy Hoffman, Paul Snider, Ahmar Siddiqui, James Covington, Marion Kelly and others know about the situation. Wendy Hoffman left the job in part because of her. Another staff member, Eric Helms, also left the job because of her. The Engineering and Analysis Staff can attest to it. She is late in reviewing the work. John Wathen probably knows about my mistreatment by her when I was in SHPD, not in EAD. I have always fulfilled my obligation in managing the technical support documents about water quality standards tasks. I never had any problem with my prior supervisor, Janet Goodwin, in fulfilling my responsibilities. This new Branch Chief was highly differential in my treatment. Julie became my supervisor in 2022. She has been hostile, deliberately fixing tight deadlines to make the situation worse without genuine reasons. During the one-to-one meetings she is hostile. She looks for the opportunities to create continuously hostile environment.

I applied twice in the division for the GS 14 position. Both time I was turned down. However, both time white and younger individuals were promoted. The positions were advertised, but it seems this was all to hide the true motive. It seems that decisions to promote individuals were already made. Advertisement was just a show.

As I stated before I am highly allergic to clones, perfumes, scents, etc. I applied for reasonable accommodation so that I can travel in non-rush hours to avoid exposure to perfumes during the rush hours in Metro rail. My request was denied on December 4, 2018, by the managment without any genuine reason, while some other staff members had left late from the

1

office for a long time. It reflects callous disregard about my health. Denial of reasonable accommodation is against the law without genuine reason.

Even more importantly, as the EPA counselor was talking to Branch Chief in April 2019 about my informal complaint, he retaliated by giving me unsatisfactory in midterm performance review and placed me on the performance improvement plan on April 25, 2019. He used the false pretext of delaying the task order not meeting the deadline and not sending email. He has required me to give him progress report every week. Other staff members are not required to present progress reports. He is abusing his authority. EAD was supposed to start work a long time before I was assigned this work. But EAD did not do anything, I was told by Kathy Hurd a staff member in OWOW. Brach Chief retaliated on my complaint about discrimination, hostile work environment, suspension and denial of reasonable accommodation.

I should be compensated for management harming my career, ruining my reputation, and creating hostile work environment. I should be compensated for suffering, pain, physical and emotional stress. The managment should be directed to stop discrimination and reverse the suspension action. I should be provided punitive damages and attorney fee as appropriate.

*[signature]*
Ghulam Ali

Date: March 21, 2025

## CERTIFICATION

I hereby certify that I will hand deliver the complaint document to the United States Attorney's Office for the District of Columbia, 601 D Street NW | Washington, D.C. 20530, on March 21, 2025.

*[signature]*

Ghulam Ali

March 21, 2025