**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GHULAM ALI,

       *Plaintiff,*

    v.

LEE ZELDIN, Administrator of the
Environmental Protection Agency,

       *Defendant.*

Civil Action No. 25-852 (SLS)

Judge Sparkle L. Sooknanan

**MEMORANDUM OPINION**

Ghulam Ali, an economist at the Environmental Protection Agency (EPA), is no stranger to this Court. Over his more than thirty-year career at the EPA, Mr. Ali has sued the agency several times alleging employment discrimination in violation of a panoply of statutes.[1] In this lawsuit, he brings various claims alleging discrimination based on race, sex, national origin, age, and disability. The EPA Administrator moves to dismiss, arguing that Mr. Ali has failed to either exhaust his administrative remedies or adequately plead his claims. The Court agrees with many of the Administrator's arguments but concludes that some of Mr. Ali's claims cannot be dismissed at this early stage. It thus grants in part and denies in part the Administrator's motion.

**BACKGROUND**

**A.    Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

---

[1] *See Ali v. Pruitt*, No. 17-cv-1899, 2020 WL 6134671 (D.D.C. Oct. 19, 2020); *Ali v. McCarthy*, No. 14-cv-1674, 179 F. Supp. 3d 54 (D.D.C. 2016); *Ali v. Whitman*, No. 02-cv-1422 (D.D.C.).

Because Mr. Ali is proceeding pro se, the Court must consider the Complaint "in light of all filings, including filings responsive to [the] motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (cleaned up). The Court also takes "judicial notice of public records from other court proceedings." *Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011).

Mr. Ali has worked as an economist at the EPA since 1990. Compl. 2–3, ECF No. 1; *Ali v. McCarthy*, 179 F. Supp. 3d 54, 61 (D.D.C. 2016). He is a seventy-nine-year-old man of Pakistani national origin, who is "highly allergic to [colognes], perfumes, scents," and other organic compounds. Compl. 2, 11; Opp'n 5. His Complaint alleges discrimination based on race, sex, national origin, age, and disability. Compl. 2–3. Specifically, he alleges that EPA "management" (*i.e.*, his supervisors Brian Damico and Julie Hewitt) impermissibly (1) failed to promote him, (2) suspended him for two weeks, (3) created a hostile work environment, (4) placed him on a performance improvement plan, and (5) denied him a reasonable accommodation. Comp. 2–3.

Mr. Ali's Complaint is not entirely clear on when and how the above actions occurred. But based on his allegations—and the Equal Employment Opportunity Commission (EEOC) Decision that Mr. Ali attached to his Complaint, ECF No. 1-2—the Court infers the following.

In March 2017 and again in December 2017, Mr. Ali applied for certain Environment Protection Specialist positions at the GS-14 level. EEOC Decision 2. Mr. Ali was not selected for either position; instead "white and younger individuals were promoted." Compl. 11.

On June 28, 2018, the EPA suspended Mr. Ali for fourteen days for "leaving late from the office," citing security concerns that are not explained in the record. Compl. 2, 6; EEOC Decision

2; Opp'n 10.[2] Mr. Ali alleges that he left the office late to "avoid rush hour[]" on the Metro when he was more likely to encounter people wearing perfumes and colognes that aggravate his severe perfume allergy. Compl. 4–5. Mr. Ali's union "missed the deadline" to pursue a grievance on his behalf. Compl. 5.

On November 15, 2018, Mr. Ali applied for a reasonable accommodation to "travel in non-rush hours" because of his allergy. Compl. 11–12; Opp'n 1. On December 4, 2018, his request was denied without an explanation. Compl. 11–12; EEOC Decision 2. Mr. Ali was previously "granted a reasonable accommodation to work full time from home" but elected not to do so because his "home environment was not suitable for office work." Opp'n 1. He also alleges that other employees who are "younger" and "white" arrived at or left the office at irregular hours "without any reasonable accommodation" and without being similarly disciplined. Compl. 5; Opp'n 11.

Around this same time, in October 2018, Mr. Damico began including Ms. Hewitt, who is not in Mr. Ali's supervisory chain, in their "biweekly one-to-one meetings." Compl. 4; EEOC Decision 2. According to Mr. Ali, both Mr. Damico and Ms. Hewitt were "hostile" to him during these meetings. Compl. 1. Ms. Hewitt also assigned Mr. Ali work with "unrealistically tight deadlines so that [Mr. Damico] . . . could take adverse action against [him]." Compl. 1.[3]

On January 14, 2019, Mr. Ali contacted an EEO counselor to informally report these events as discrimination. Opp'n 1; *see also* Mot., Ex. A, EEO Counselor's Report, ECF No. 4-1. Soon after that, around January 29, 2019, Mr. Ali had trouble submitting an assignment because of a

---

[2] Mr. Ali's Complaint alleges that his suspension was in August 2018, *see* Compl. 5 n.1, ECF No. 1, but the EEOC Decision attached to his Complaint indicates that the suspension was on June 28, 2018, EEOC Decision 2, ECF No. 1-1.

[3] During roughly this same period, Mr. Damico denied Mr. Ali's request to "publish a scholarly article." EEOC Decision 5, Opp'n 20–23. Mr. Ali later received permission from a different supervisor to publish the article. Opp'n 22.

3

"software issue." Compl. 6–9. According to Mr. Ali, the entire incident arose at least in part because he had "rushed to get out of the office to avoid the chance of being suspended again." Compl. 7. As a result, Mr. Ali did not save the file he was working on in the location where his superiors expected to find it. Compl. 7–8. Before even reviewing the assignment, Mr. Damico emailed Mr. Ali saying that his "work [was] not acceptable," "stating other baseless things," and directing Mr. Ali to brief Ms. Hewitt on the issue even though Ms. Hewitt was not Mr. Ali's supervisor. Compl. 7–8; EEOC Decision 2.

In March 2019, Mr. Damico and Ms. Hewitt removed Mr. Ali from "the Dredge and Fill project and the State Certification project." EEOC Decision 2; Compl. 9. According to Mr. Ali, the Dredge and Fill project was a "high visibility and high priority project," and "management did not want [him] to get any recognition" for working on that project. Compl. 9–10. They assigned the work to "a white and younger staff member," and instead moved Mr. Ali to a very difficult assignment "developing response essays for the Step 1 rule." Compl. 10; EEOC Decision 2. Once again, Ms. Hewitt gave Mr. Ali "a very tight schedule" to complete it. Compl. 10. And even though Mr. Ali sent his essays to Ms. Hewitt "on time," she did not promptly provide feedback on the essays for Mr. Ali to address, thus "creating opportunities for [Mr. Damico] to harass [Mr. Ali] on the basis of deadlines." Compl. 10.

In April 2019, Mr. Damico gave Mr. Ali an "unsatisfactory midyear performance appraisal evaluation." EEOC Decision 2; Compl. 12. Not long after, Mr. Damico placed Mr. Ali on a "performance improvement plan." Compl. 12.[4] Mr. Ali alleges that Mr. Damico issued the review

---

[4] Mr. Ali alleges that he was placed on a performance improvement plan on April 25, 2019. Compl. 12. The EEOC Decision indicates that this occurred on May 2, 2019. EEOC Decision 2.

and performance improvement plan around the same time that the "EPA counselor was talking to [Mr. Damico] in April 2019 about [Mr. Ali's] informal complaint." Comp. 12.

On May 23, 2019, Mr. Ali filed a formal EEO complaint alleging "discrimination and a hostile work environment on the bases of race (Asian), national origin (Pakistani), sex (male), religion (Islam), color (black), disability (physical), age (over 40), and in reprisal for prior protected activity." EEOC Decision 2; Compl. 2–3. Mr. Ali alleges that he has continued to face discrimination since filing his EEO complaint. He received a "minimally satisfactory rating" on his 2019 annual rating. Opp'n 2. And Ms. Hewitt continues to subject him to a "hostile work environment[]" by, among other things, making him meet "unrealistic deadlines" and assigning him work outside of his "core responsibilities" that he is not trained to do. Compl. 2.

### B.    Procedural Background

Mr. Ali filed this lawsuit against the EPA's Administrator, Lee Zeldin, on March 21, 2025. Compl. He alleges violations of Title VII of the Civil Rights Act, the Lily Ledbetter Fair Pay Act of 2009, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Age Discrimination in Employment Act of 1967 (ADEA). Compl. 3. On July 21, 2025, the Administrator moved to dismiss Mr. Ali's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[5] ECF No. 4. That motion is fully briefed and ripe for decision. *See* Pl.'s Opp'n Mot. Dismiss, ECF No. 10; Def.'s Reply, ECF No. 11.

---

[5] In moving to dismiss under Rule 12(b)(1), the Administrator relies on *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006), to argue that exhausting administrative remedies "is a jurisdictional requirement under the Rehab[ilitation] Act." Mot. 5, ECF No. 4. The D.C. Circuit has since clarified, however, that its holding in *Spinelli* was limited to the circumstances presented in that case, where the plaintiff "never filed an administrative complaint." *Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015). When an individual has filed a complaint and participated in the administrative process, the way in which they have done so "procedurally and substantively, are not of jurisdictional moment." *Id.* Here, Mr. Ali has "filed and received a final disposition of [his]

5

## LEGAL STANDARD

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an "inference[] . . . unsupported by the facts set out in the complaint.'" *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted). "Although a pro se complaint must be construed liberally, the complaint must still present a claim on which the Court can grant relief to withstand a Rule 12(b)(6) challenge." *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (cleaned up).

## DISCUSSION

The Court construes Mr. Ali's Complaint as advancing a failure to accommodate claim under the Rehabilitation Act, and discrimination, retaliation, and hostile work environment claims

---

administrative complaint," so his Rehabilitation Act claim is not barred on jurisdictional grounds. *Id.* Accordingly, the Court evaluates the Administrator's motion only under Rule 12(b)(6).

under the Rehabilitation Act, Title VII, and the ADEA.[6] The Administrator contends (1) that many of Mr. Ali's claims have not been administratively exhausted, and (2) that the remaining claims have not been plausibly alleged. The Court agrees that many of Mr. Ali's claims are not viable. But at this early stage, his failure to accommodate and retaliation claims survive dismissal.

### A.    Administrative Exhaustion

Any federal employee alleging discrimination under Title VII, the ADEA, or the Rehabilitation Act must exhaust administrative remedies before filing suit in federal district court. *Bozgoz v. James*, No. 19-cv-239, 2020 WL 4732085, at *6 (D.D.C. Aug. 14, 2020); *see also Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (individuals must "exhaust administrative remedies before they can file suit to enforce the [Rehabilitation] Act's protections"); *Washington v. Wash. Metro. Area Transit Auth.* (*WMATA*), 160 F.3d 750, 752 (D.C. Cir. 1998) (same for ADEA and Title VII). The exhaustion requirement applies equally to retaliation claims. *See Niskey v. Kelly*, 859 F.3d 1, 10–11 (D.C. Cir. 2017). And the process for an employee to exhaust their administrative remedies is the same under all three statues. *See Doak*, 798 F.3d at 1099 (explaining

---

[6] As another court in this District explained in one of Mr. Ali's prior suits, Mr. Ali's claim under the Americans with Disabilities Act "is not actionable . . . because [he] is an employee of the federal government and, therefore, his workplace disability claims are governed by the Rehabilitation Act." *Ali v. McCarthy*, 179 F. Supp. 3d at 60 n.1 (first citing 29 U.S.C. §§ 701 *et seq.*; and then citing *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993)). And to the extent Mr. Ali seeks to assert claims under the Lily Ledbetter Fair Pay Act of 2009, those claims "are not actionable because he does not appear to have alleged that he was paid less than similarly situated GS-13 persons outside of his protected groups." *Id.* Finally, if Mr. Ali seeks to bring claims under 42 U.S.C. § 1981, those claims similarly are not actionable. While Section 1981 "prohibits discrimination based on race in the formation of contracts . . . [,] 'Title VII provides the exclusive statutory remedy for an employee's racial discrimination claims against a federal government agency.'" *Id.* (quoting *Marcus v. Geithner*, 813 F. Supp. 2d 11, 19 (D.D.C. 2011)); *see also Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) ("Title VII of the Civil Rights Act of 1964, as amended, "provides the exclusive judicial remedy for claims of discrimination in [covered] federal employment. (quoting *Brown v. GSA*, 425 U.S. 820, 835 (1976))).

that the same "procedural framework for processing complaints of discrimination" applies under the Rehabilitation Act, Title VII, and the ADEA).[7]

That process, in brief, is as follows. An employee who believes that they have been the victim of unlawful discrimination must contact an EEO counselor at the agency where they are employed "within 45 days" of the allegedly discriminatory action. *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). This forty-five-day clock "begins to run when an employee has a 'reasonable suspicion' of a discriminatory action." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (quoting *Adesalu v. Copps*, 606 F. Supp. 2d 97, 102 (D.D.C. 2009). If the matter cannot be resolved informally, the aggrieved individual "may then file a complaint with the agency," beginning a formal process by which the agency "investigates, considers, and decides the merits of the complaint." *Doak*, 798 F.3d at 1099–1100 (citing 29 C.F.R. § 1614.106–110). After receiving a final decision from the agency, the complainant has ninety days to file a civil action in federal court. *Nguyen*, 895 F. Supp. 2d at 171 (citing 29 C.F.R. § 1614.407).

"A discrimination lawsuit brought after an employee goes through this process must be limited to the claims that were alleged in the EEO complaint or that were 'like or reasonably related to the allegations . . . and growing out of such allegations.'" *Bozgoz*, 2020 WL 4732085, at *7 (quoting *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995)).[8] In other words, the

---

[7] As an alternative to filing an administrative complaint, the ADEA also permits a federal employee to "bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, the employee provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 172 (D.D.C. 2016) (cleaned up) (quoting *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003)). Mr. Ali does not allege that he gave the EEOC notice of his intent to sue under the ADEA. His ADEA claim is thus subject to the same administrative exhaustion requirements as his other claims.

[8] The continuing vitality of the so-called "like or reasonably related to" doctrine is an open question in this Circuit. *See Coleman v. Duke*, 867 F.3d 204, 213 n.7 (D.C. Cir. 2017); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). Because application of that doctrine is not dispositive to resolution of any of Mr. Ali's claims, the Court need not address the impact on the doctrine, if any,

claims must "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* at *8 (cleaned up). "A plaintiff's purported failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of pleading and proving it." *Id.* at *6. "[A]n employee who missteps in the process may avoid dismissal if he qualifies for equitable relief from the deadline by demonstrating good cause for the procedural failure." *Niskey*, 859 F.3d at 7.

Here, Mr. Ali acknowledges that he first contacted an EEO counselor on January 14, 2019. Opp'n 1; *see also* Mot., Ex. A, EEO Counselor's Report. His claims premised on discriminatory acts that occurred more than 45 days before that date—*i.e.*, before November 30, 2018—are thus presumptively barred. *See Doak*, 798 F.3d at 1099 (citing 29 C.F.R. § 1614.105(a)(1)). This means that Mr. Ali cannot advance distinct discrimination claims based on the promotions he was denied in 2017, his suspension in June 2018, Mr. Damico's refusal to permit him to publish a scholarly article in August 2018, or any other "discrete acts" that may have occurred before November 30, 2018. *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004) (an act is a "discrete act" if it occurred at a "fixed time" and might support a standalone claim of discrimination—such as termination, failure to promote, or denial of an accommodation (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002))).

Mr. Ali tries to avoid this conclusion—at least as to his denied March 2017 promotion and his June 2018 suspension—by appealing to the doctrines of equitable estoppel and equitable tolling. Opp'n 11–14, 28–30. In a nutshell, he argues that he did not promptly challenge his denied promotion because he "lacked sufficient information" about the inferior qualifications of the

---

of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). *See Payne*, 619 F.3d at 65.

candidate selected, Opp'n 28–30, and that he did not challenge his suspension because he relied on his union to pursue a grievance on his behalf, Opp'n 11–14. These arguments are unavailing.

To invoke equitable estoppel, a claimant bears the burden of showing (1) that "the party asserting a limitations defense made a 'definite representation' to the claimant"; (2) that "the claimant 'relied on its adversary's conduct in such a manner as to change his position for the worse'"; and (3) that "the claimant's 'reliance was reasonable.'" *Doe v. United States*, No. 20-cv-3553, 2022 WL 14760938, at *4 (D.D.C. Oct. 25, 2022) (cleaned up) (quoting *Morris Comms., Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009)). Put differently, a claimant must point to some type of "affirmative misconduct" or misleading information provided by the defendant that led the claimant to miss the relevant deadline. *Washington*, 160 F.3d at 753. When attempting to estop the government, a claimant must show that any government official who engaged in "affirmative misconduct" was acting "within the scope of [their] authority" when making the declarations on which the claimant relied. *Doe*, 2022 WL 14760938, at *4.

Courts will equitably toll a missed deadline "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). The plaintiff bears the burden of pleading and proving equitable reasons to toll, *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982), and must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013) (cleaned up) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "appropriate only in 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020) (quoting *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015)).

Mr. Ali does not carry his burden under either doctrine. To begin, he does not allege any "affirmative misconduct" by EPA officials related to his denied promotion or suspension that would warrant the application of equitable estoppel to those claims. The closest he comes is alleging that his union representative and union attorney bungled the pursuit of his grievance following his June 2018 suspension. Opp'n 11–12. But neither of these individuals could plausibly be described as government officials acting within the scope of their authority. And as to Mr. Ali's arguments regarding the denied promotion, he does not allege that EPA officials somehow disguised or concealed the qualifications of the candidate who was hired. Indeed, that candidate was promoted from within the same unit in which Mr. Ali worked.[9]

Mr. Ali's invocation of equitable tolling is similarly deficient. As to Mr. Ali's denied promotion, his allegations do not plausibly show that he pursued his rights diligently. Mr. Ali's prior litigation indicates that he believes he has previously been passed over for promotions based on discriminatory reasons. *See, e.g.*, Mem. Op. at 2, *Ali v. Whitman*, No. 02-cv-1422, ECF No. 15 (D.D.C. Dec. 7, 2003). The Court is therefore dubious that when Mr. Ali was denied the promotion in 2017, he did not think to question whether the candidate who had beaten him out for the job was in fact more qualified. This is all the more true given that Mr. Ali had worked in the same office as that candidate for two years before her promotion. Under the circumstances alleged, taking more than a year and a half to discover his colleague's basic credentials is not reasonable diligence.

---

[9] Mr. Ali also alleges that he only learned after the fact that the hiring process was "effectively predetermined" by one of the EPA supervisors involved in hiring who always planned to hire the candidate that was ultimately selected. Opp'n 27, 29. Even assuming Mr. Ali's belated discovery of this information might constitute a basis for tolling, which is far from clear, Mr. Ali does not allege when the discovery was made and provides no indication that it happened after November 30, 2019, more than a year and a half after the promotion decision was made.

Turning next to the June 2018 suspension, the Court is sympathetic to Mr. Ali's frustrations regarding his union's purported mishandling of his grievance. Even so, the circumstances he describes do not fall within the "extraordinary and carefully circumscribed instances" where equitable tolling is necessary to prevent gross injustice. *Mondy*, 845 F.2d at 1057. A comparison to one of the cases relied on by Mr. Ali, *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236 (3d Cir. 1999), is illustrative. In *Seitzinger*, the plaintiff, whose complaint had been filed one day late, alleged that she had "persistently questioned [her] lawyer as to whether he had filed [her] complaint in time, and he affirmatively misrepresented to her that he had." 165 F.3d at 237–39. In concluding that equitable tolling might apply, the Third Circuit emphasized not only that the attorney had affirmatively lied to the plaintiff, but also that the plaintiff appeared to "have been extremely diligent in pursuing her claim . . . contact[ing] [her attorney] before the filing deadline . . . to ensure that he had filed the complaint[,] . . . repeatedly call[ing] him, requesting a copy of the complaint[,] and seeking information on how her case was progressing." *Id.* 241. Mr. Ali has alleged no comparable diligence here.

Accordingly, the Court dismisses any discrimination claims based on "discrete acts" that occurred before November 30, 2019, because they have not been administratively exhausted.

### B.    Remaining Claims

The Court now turns to the claims that remain. Mr. Ali has sufficiently alleged claims for failure to accommodate and retaliation, but his other claims must be dismissed.

### 1.    Failure to Accommodate

Under the Rehabilitation Act, for a federal employee to plausibly state a claim that he has been denied a reasonable accommodation, he must allege that: "(1) he is disabled, (2) his employer had notice of the disability, and (3) the employer denied his request for a reasonable

accommodation." *Ali v. Regan*, 111 F.4th 1264, 1268–69 (D.C. Cir. 2024). "The employee bears the 'initial burden' of showing that a reasonable accommodation is possible." *Id.* (quoting *Carter v. Bennett,* 840 F.2d 63, 65 (D.C. Cir. 1988)). "Once that showing is made, an employer may still avoid liability by showing that the proposed accommodation would impose an "undue hardship" on the employer's operations." *Id.* (first citing 42 U.S.C. §§ 12111(10)(A), 12112(b)(5)(A); and then citing 29 U.S.C. § 791(f)). "An employer fully satisfies its statutory obligation by offering an accommodation that is reasonable, even if it is not the one preferred by the employee." *Id.*

Here, Mr. Ali's failure to accommodate claim survives dismissal at this early stage. First, he alleges that he has a disability: a severe allergy to colognes, perfumes, scents, and other organic compounds. Compl. 5, 11; Opp'n 5. Second, he alleges that the EPA was aware of his disability both because he raised it by requesting accommodations and because the EPA had accommodated his disability in the past. Compl. 11–12; Opp'n 5–6. Third, he alleges that he requested a reasonable accommodation for his disability—to commute at non-rush hours when the risk of aggravating his allergy was reduced—and that the EPA denied that request. Comp. 11–12; Opp'n 5–6. Finally, he alleges that the accommodations the EPA offered as alternatives were not reasonable. Opp'n 6. Splitting his workday between his home and office would have "imposed substantial logistical and physical burdens." *Id.* And working entirely from home was not feasible because his "home lacked [an] office set up" and his spouse did not consent to him working at home. *Id.*

The Administrator attacks the sufficiency of Mr. Ali's allegations in two ways. First, he argues that Mr. Ali has not sufficiently alleged that he has a disability within the meaning of the Rehabilitation Act. Reply 4–5. And second, he asserts that Mr. Ali was provided with a reasonable accommodation by being "permitted to use telework so that he could avoid the rush hour commute." *Id.* Neither argument succeeds.

As to the first, the Court is satisfied at this early stage that Mr. Ali has plausibly alleged that he "is an individual who has a physical or mental impairment that substantially limits one or more major life activities and who can perform the essential functions of [his] job with or without reasonable accommodation." *Doak*, 798 F.3d at 1098 (cleaned up); *see also Morris v. Jackson*, 994 F. Supp. 2d 38, 46 (D.D.C. 2013) (an allergy can constitute a disability under the Rehabilitation Act).[10] And the Administrator's second argument runs headlong into D.C. Circuit case law, including decisions in Mr. Ali's prior lawsuits. The D.C. Circuit's 2024 decision regarding a prior request for accommodation by Mr. Ali makes clear that "the reasonableness of telework" as an offered accommodation "cannot be presumed." *Ali v. Regan*, 111 F.4th at 1280. As the Circuit explained:

> Offering a willing employee a remote-work option is very different from forcing remote work on an unwilling employee as the sole option for accommodating that employee's disability. In the latter case, the factual record would have to justify the reasonableness of such forced segregation, such as by showing the absence of an integrative reasonable accommodation.

*Id.* at 1279. The Circuit thus emphasized that determining whether telework is a reasonable accommodation for an individual employee is often a "fact-sensitive inquiry" that depends on that employee's job function and circumstances. *Id.* at 1280.

At bottom, the Court is sympathetic to the Administrator's contention that the EPA has provided Mr. Ali with effective accommodations by permitting him to telework. And the EPA may well ultimately show that it has fulfilled its obligations under the Rehabilitation Act. *See id.* (in some circumstances an employer might establish that "remote work" is a reasonable accommodation "even if [an] employee objects to it"). But at this early point in the case and based

---

[10] The Court also notes that in prior litigation the EPA has not contested that Mr. Ali has a disability. *See, e.g.*, *Ali v. Regan*, 111 F.4th at 1274 ("There is no dispute in this case that [Mr.] Ali is a qualified individual with a disability.").

on the allegations in the Complaint, the Court cannot say that there was no "integrative reasonable accommodation" to which Mr. Ali was entitled. *Id.* at 1279. Thus, the Court cannot dismiss Mr. Ali's claim.

### 2.   Distinct Discrimination Claims

Other than his failure to accommodate claim, the EEOC Decision attached to Mr. Ali's Complaint identifies five discrete acts (after November 30, 2018) that might conceivably support distinct discrimination claims: (1) Mr. Damico's email in January 2019 telling Mr. Ali that his work was not acceptable and that he had to brief Ms. Hewitt; (2) Ms. Hewitt's decision in March 2019 to remove Mr. Ali "from the Dredge and Fill project and the State Certification Project"; (3) Ms. Hewitt's assigning Mr. Ali, also in March 2019, to work on a response essay for the "Step 1 Rule"; (4) Mr. Damico issuing Mr. Ali an "unsatisfactory midyear performance appraisal evaluation" in April 2019; and (5) Mr. Damico putting Mr. Ali on a "Performance Improvement Plan" in May 2019. EEOC Decision 2. The Court concludes that none of these acts support a plausible discrimination claim.

"Under Title VII, the ADEA, and the Rehabilitation Act, the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "A plaintiff must prove both elements to sustain a discrimination claim." *Id.* As to the latter element, a plaintiff's allegations may support an inference of discrimination by either identifying "direct evidence of animus" or by comparison to a similarly situated employee. *Yuvienco v. Vilsack*, No. 23-cv-186, 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024) (cleaned up). When a plaintiff relies on a comparison to a similarly situated employee, the plaintiff "must also demonstrate that all of the relevant aspects of his employment

15

situation were nearly identical to those of the other employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up).

Here, even if the acts identified by Mr. Ali constitute "adverse employment actions," which the Administrator contests, Mot. 8–13, Mr. Ali has not sufficiently alleged that they were taken *because* of his protected characteristics. To begin, Mr. Ali alleges no facts that amount to direct evidence of animus. He does not, for example, identify any specific comments by his supervisors or colleagues referencing his race, national origin, age, sex, religion, or disability. Instead, he relies on broad and conclusory allegations. *See, e.g.*, Compl. 7 ("I was singled out for discrimination. The management was hostile, while retaliat[ing] against me because of my disability, national origin, religion, age, sex, etc."). These are the "exact types of allegations that, standing alone, fail to state a claim." *Yuvienco*, 2024 WL 727712, at *3.

Mr. Ali's efforts to demonstrate discrimination by reference to similarly situated employees are equally deficient. While Mr. Ali identifies other employees outside of his protected groups who were not subject to the same allegedly adverse actions, he falls well short of alleging that their employment situations were "nearly identical" in "all of the relevant aspects of his employment." *Burley*, 801 F.3d at 301 (cleaned up). For example, Mr. Ali identifies Mike Trombley and Karen Milam as two individuals outside of his protected groups who were given more desirable assignments during early 2019. Opp'n 26, 31–32. But he alleges nothing about how Mr. Trombley was similarly situated—in fact, he acknowledges that Mr. Trombley worked in a different division—and Ms. Milam does not appear to be similarly situated as she held one of the Environment Protection Specialist positions that Mr. Ali applied for but did not get in 2017.[11]

---

[11] Mr. Ali also identifies three individuals who came to the office at irregular hours who did not have reasonable accommodations and who were not similarly disciplined: Julie Hewitt, Ashley Allen, and Tom Born. Opp'n 11; Compl. ¶ 5. To the extent these individuals were similarly

Mr. Ali's other remaining allegations about comparators are too vague to support an inference of discrimination. *See, e.g.*, Compl. 6–7 ("[s]ome staff members work from home" with "no restrictions on their time").[12]

Thus, any distinct discrimination claims that Mr. Ali seeks to bring outside of his failure to accommodate claim are dismissed.

### 3.    Hostile Work Environment

It is not entirely clear under what statutes Mr. Ali brings his hostile work environment claim. *See* Opp'n 14–20, 38–41 (linking hostile work environment claim to retaliation under Title VII and to "age-based" discrimination, but not mentioning disability). In any event, under Title VII, the ADEA, and the Rehabilitation Act, "the bar for demonstrating a hostile work environment is a high one," *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016), and Mr. Ali fails to clear it.[13]

"To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch,* 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). The Supreme Court has made clear that "conduct must be extreme to amount to a change in the terms and conditions

---

situated—and it is not clear from the Complaint that they were—their comparative treatment may be relevant to Mr. Ali's reasonable accommodation claim. He cannot, however, rely on their comparative treatment to support a standalone discrimination claim based on his June 2018 suspension because, as explained previously, he did not administratively exhaust that claim.

[12] Indeed, Mr. Ali undercuts an inference of age discrimination in his Opposition when he states that "no other employee of comparable age experienced similar treatment." Opp'n 38.

[13] Hostile work environment claims brought under the Rehabilitation Act and the ADEA are analyzed under the same framework as Title VII of the Civil Rights Act. *See Sanders v. Kerry*, 180 F. Supp. 3d 35, 44 (D.D.C. 2016) (analyzing claim brought under Rehabilitation Act); *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 227 (D.D.C. 2015) (analyzing claim brought under ADEA).

of employment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). It must create an environment that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. By adhering to these standards, a court "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace[.]" *Id.* at 788 (cleaned up).

In some instances, courts may consider discrete discriminatory actions that have not been administratively exhausted as "component acts" of a "hostile work environment claim" that was timely filed. *See Morgan*, 536 U.S. at 117. Here, that means that the Court may consider the allegedly discriminatory acts that Mr. Ali did not administratively exhaust (including his denied promotions and suspension) in assessing the viability of his hostile work environment claim.

Looking to the totality of circumstances alleged, including the acts that were not administratively exhausted, it is clear that Mr. Ali has not alleged discriminatory conduct that is severe or pervasive enough to state a hostile work environment claim. As discussed previously, Mr. Ali identifies no specific comments made orally or in writing by colleagues or supervisors that display any discriminatory animus. Instead, he repeatedly asserts, in conclusory fashion, that Ms. Hewitt and Mr. Damico were "hostile" or demonstrated "hostile behavior" towards him. *See, e.g.*, Compl. 1, 4. And he claims hostility on the part of EPA management because they imposed deadlines that he felt were unreasonable and then penalized him for failing to meet them. Such conduct is not so extreme or offensive as to "create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Accordingly, Mr. Ali's hostile work environment claim, regardless of the statute under which he brings it, must be dismissed.

18

### 4.    Retaliation

To state a claim for retaliation under Title VII, the Rehabilitation Act, and the ADEA, a plaintiff generally must allege that "he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch*, 550 F.3d at 1198. Notably, the D.C. Circuit has explained that "'adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim" and are "not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 1198 n.4 (cleaned up). Actions are "materially adverse" when they "would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 1198 (cleaned up) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Here, the Administrator does not contest that Mr. Ali engaged in protected activity, which he did both by requesting a reasonable accommodation in November 2018, and by contacting an EEO counselor in January 2019. *See generally* Mot. 14, Reply 6; *see also Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014) ("the act of requesting in good faith a reasonable accommodation is a protected activity" under the Rehabilitation Act); *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) ("plaintiff engaged in protected activity when she first contacted EEO Counselor . . . to complain of workplace discrimination"). Nor does the Administrator appear to contest that at least some of the relevant actions (*e.g.*, Mr. Ali's unsatisfactory midyear performance appraisal and placement on a performance improvement plan) would qualify as "materially adverse" for purposes of stating a retaliation claim. *Id.* at 28. Instead, the Administrator's sole attack is that Mr. Ali does not sufficiently allege that any of the officials who allegedly retaliated against him—namely, Mr. Damico and Ms. Hewitt—had any knowledge that he had engaged in EEO activity. Mot. 14.

19

But Mr. Ali does allege this. Specifically, he alleges that "as the EPA counselor was talking to [Mr. Damico] in April 2019 about [Mr. Ali's] informal complaint, [Mr. Damico] retaliated by giving [Mr. Ali] [an] unsatisfactory in [his] midterm performance review and plac[ing] [Mr. Ali] on [a] performance improvement plan on April 25, 2019." Compl. 12. Standing alone, this allegation is not robust. But viewing it in the light most favorable to Mr. Ali, as the Court must at this stage, it is enough. *See Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) ("[T]o survive a motion to dismiss, all the complaint has to say is 'the [defendant] retaliated against me because I engaged in protected activity.'" (cleaned up)). This allegation also does not stand entirely on its own. The Court finds it reasonable to infer that Mr. Damico—as Mr. Ali's supervisor—would likely have been aware of Mr. Ali's November 2018 request for a reasonable accommodation. And the adverse actions that Mr. Ali attributes to Mr. Damico followed close enough after his denied accommodation request to support an inference that the two were related. *See, e.g.*, *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (temporal proximity can "support an inference of causation . . . where the two events are 'very close' in time" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001))).

Accordingly, Mr. Ali's retaliation claim survives dismissal.

## CONCLUSION

For the above reasons, the Court grants in part and denies in part the Administrator's Motion to Dismiss. ECF No. 4. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date:    March 23, 2026

20